



## MEMORANDUM OPINION

No. 04-12-00121-CV

**IN THE INTEREST OF K.A.S.,** A Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-01824
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  September 12, 2012

AFFIRMED

L.S. and M.H., the mother and alleged father, respectively, of K.A.S., appeal the trial court's order terminating their parental rights to K.A.S. We affirm the judgment of the trial court.

### BACKGROUND

On April 2, 2011, the Texas Department of Family and Protective Services ("the Department") received a referral alleging neglectful supervision of newborn K.A.S. by his mother, L.S. On April 20, 2011, the Department was granted temporary managing conservatorship of K.A.S. A month later, the Department changed the case to a motion to participate and K.A.S. was returned to L.S. on the condition that she comply with certain

requirements. On July 20, 2011, the Department filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship." In the petition, the Department stated that K.A.S. was taken into its possession on July 19, 2011 in compliance with section 262.104. *See* TEX. FAM. CODE ANN. § 262.104 (West 2008). The Department alleged that there was a continuing danger to the physical health or safety of the child if returned to the parent, that continuation of the child in the home would be contrary to the child's welfare, and that reasonable efforts were made to prevent or eliminate the removal of the child. The affidavit of caseworker Sherri Dunn was attached in support of the petition. The same day—July 20, 2011—the trial court[1] rendered an "Order for Protection of a Child in an Emergency and Notice of Hearing." The order names the Department temporary sole managing conservator of K.A.S. until a full adversary hearing is held. On July 28, 2011, a full adversary hearing was held. At that time, the trial court[2] rendered a "Temporary Order Following Adversary Hearing" in which the Department's appointment as temporary managing conservator of K.A.S. was maintained.

A bench trial on the merits was held on January 23, 2012. L.S. did not appear, although her attorney did, and M.H. appeared telephonically from a drug rehabilitation facility. The first witness was Department caseworker Mark Rogers. Rogers stated that the Department first became involved at the time of K.A.S.'s birth on April 2, 2011 due to allegations of neglectful supervision by the mother. Rogers stated that L.S. did not have a stable living environment and that she was a past drug user with a criminal history. Rogers stated that L.S. admitted to him that she used Vicodin during her pregnancy, although he conceded that neither L.S. nor K.A.S. tested positive for any illegal substances. Rogers stated that K.A.S.'s father was in jail at the time of

[1] The Honorable Richard Garcia, Associate Judge, Bexar County, Texas.

[2] The Honorable Richard Garcia, Associate Judge, Bexar County, Texas.

his birth. Rogers also stated that L.S. previously had parental rights terminated to her two other children.

Another Department caseworker, Sherri Dunn, testified that she received the case from Rogers. The Department originally attempted to work the case as a motion to participate without having to remove K.A.S.; however, L.S. did not maintain contact with Dunn and failed to do her "services," such as take K.A.S. to daycare. Thus, at the scheduled review hearing on July 19, 2011, the Department asked for removal of K.A.S. and was named temporary managing conservator. K.A.S., who did not show any signs of malnutrition or neglect, was placed in a foster adopt home with his sibling who was previously adopted after L.S.'s and M.H.'s parental rights were terminated. Dunn did not set up a service plan for L.S. because L.S. failed to inform Dunn of her address or phone number. Dunn stated that L.S. has not visited K.A.S. since the Department was granted temporary managing conservatorship six months before trial. Dunn stated that, to her knowledge, L.S. has given birth to three children, none of whom are currently in her custody. No father was named on K.A.S.'s birth certificate; however, L.S. told Dunn that M.H. was the father. Dunn learned that M.H. was in the Bexar County Jail and sent him a letter with his family service plan attached; a month later she visited M.H. in jail and went over the service plan with him. Prior to trial, Dunn learned that M.H. had been moved to a drug rehab facility. To her knowledge, M.H. had never seen K.A.S. and had not demonstrated that he was willing or able to care for K.A.S. Dunn stated that termination of both parents' rights was in K.A.S.'s best interests.

M.H. testified that he was incarcerated for possession of heroin and that he is currently in a drug treatment facility. He used heroin for a little over a year, and had also been charged with assault and possession of marijuana. While he was in jail, he wrote Ms. Dunn three letters to

update her on his compliance with the service plan. He went to counseling three times a week while incarcerated. M.H. currently meets with a counselor once a month for two hours, but conceded that he did not notify the Department of these visits. M.H. testified that before he went to jail, he was employed by a construction company and that his former boss assured him he will have a job when he is released from rehab, which was scheduled for two months after trial. Although M.H. lived with his mother before going to jail, he testified that he would be able to secure a home of his own after he completes rehab. M.H. did not believe that the Department had given him a fair opportunity to complete the required service plan. M.H. further testified that he could complete the service plan in the time between being released from rehab and July, when the one-year statutory deadline will run. *See* TEX. FAM. CODE ANN. § 263.401 (West 2008) (dismissal after one year; extension). M.H. is the father of the sibling with whom K.A.S. now resides. M.H. acknowledged that he did not complete the service plan with regard to the sibling because he was using heroin at the time. M.H. admitted physically abusing K.A.S.'s mother, L.S.

At the conclusion of the trial, the trial court granted termination of L.S.'s parental rights based on the ground of constructive abandonment. *See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West Supp. 2012) (involuntary termination of parent-child relationship). The trial court granted termination of M.H.'s parental rights based on the fact that he has not established a parent/child relationship with K.A.S., as well as on the ground of constructive abandonment. *See id.*; *see also id.* § 160.201(b) (West 2008) (establishment of parent-child relationship). The trial court also found that termination of L.S.'s and M.H.'s parental rights was in the best interest of K.A.S. *See id.* § 161.001(2) (West Supp. 2012). Both L.S. and M.H. timely appealed.

**DISCUSSION**

On appeal, L.S. and M.H. argue that (1) the evidence is insufficient to support termination on the ground of constructive abandonment and (2) trial counsel was ineffective.

*Constructive Abandonment*

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Accordingly, we strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20-21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove one of the predicate grounds in subsection (1) and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable standard of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2008); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (due process requires clear and convincing standard of proof in

parental termination cases). The clear and convincing standard is "'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re C.H.*, 89 S.W.3d at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see also* TEX. FAM. CODE ANN. § 101.007 (West 2008) (defining clear and convincing evidence).

L.S. and M.H. allege that the evidence is legally and factually insufficient to support the order of termination. Legal sufficiency review of the evidence to support a termination finding requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence to support a termination finding, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* (citing *In re C.H.*, 89 S.W.3d at 25); *see also In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (describing factual sufficiency standard of review in appeals from termination orders). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

To prove the constructive abandonment ground, the Department had to show that L.S. and M.H.:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services . . . for not less than six months, and:
> (i) the department . . . has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment[.]

*See* TEX. FAM. CODE ANN. § 161.001(1)(N) (West Supp. 2012).

L.S. and M.H. do not assert that the evidence is insufficient to support prongs (i), (ii), or (iii) of subsection (N), but instead specifically challenge the time requirement, arguing that K.A.S. was not in the Department's custody for a minimum of six months at the time of termination. They argue that on the date the termination order was signed—January 23, 2012—K.A.S. had only been in the Department's care since July 28, 2011 when the Department was appointed temporary managing conservator as reflected in the order titled "Temporary Order Following Adversary Hearing." The Department responds that it was first named temporary managing conservator on July 20, 2011 when the emergency order was signed, and that it remained the appointed temporary managing conservator of K.A.S. until the order of termination was signed on January 23, 2012. We agree that the Department was appointed temporary managing conservator on July 20, 2011, and that K.A.S. was in the Department's conservatorship for six consecutive months. The record reflects that from July 20, 2011 to January 23, 2012, K.A.S. was under the Department's custody and was not returned to his mother's care at any time. Based on the record before us, we conclude that the trial court could have formed a firm belief or conviction that the Department met the statutory six-month requirement and that L.S. and M.H. constructively abandoned K.A.S. *See* TEX. FAM. CODE ANN. § 161.001(1)(N). Thus, we hold that the evidence is sufficient to support the order of termination, and overrule L.S.'s and M.H.'s first issues.

### Ineffective Assistance of Counsel

L.S. and M.H. likewise argue that counsel was ineffective for failing to object to the lack of proof of the statutory six-month requirement at trial. An indigent parent in a parental

termination case has the right to effective assistance of counsel, and the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applied in the criminal law context has been adopted as the appropriate standard in termination cases. *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009); *In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003). To prevail on an ineffective assistance claim, an appellant must prove both *Strickland* prongs, establishing that counsel's performance was deficient and that counsel's errors prejudiced the appellant by depriving her of a fair trial whose result is reliable. *In re M.S.*, 115 S.W.3d at 545 (citing *Strickland*, 466 U.S. at 687). Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Walker v. Tex. Dept. of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

On this record, L.S. and M.H. cannot show that counsel was ineffective. As we have already concluded, the Department was the managing conservator of K.A.S. for a minimum of six months prior to the signing of the termination order; thus, counsel did not err in failing to object to the lack of evidence to support the six-month requirement. Because L.S. and M.H. cannot satisfy either of the *Strickland* prongs, we overrule their second issues on appeal, and affirm the judgment of the trial court.

Phylis J. Speedlin, Justice